STATE of Tennessee, Appellee,

v.

Clyde **RICHARDSON**, Jr., Appellant.

Court of Criminal Appeals of Tennessee, at Jackson.

Sept. 15, 1993.

Permission to Appeal Denied by Supreme Court Feb. 7, 1994.

---

Bill R. Barron, Jeffrey A. Smith, Trenton, George Morton Googe, Jan Rochester, Office of the Dist. Public Defender, Jackson, for appellant.

Charles W. Burson, Atty. Gen. and Reporter, Rebecca L. Gundt, Asst. Atty. Gen., Nashville, Don Allen, Asst. Dist. Atty. Gen., James G. Woodall, Dist. Atty. Gen., Jackson, for the State of Tenn.

## OPINION

WADE, Judge.

The defendant, Clyde Richardson, Jr., was convicted of aggravated assault, attempt to commit first degree murder, and two counts of possession of a deadly weapon with the intent to employ in the commission of an offense. The trial court imposed Range II, concurrent sentences of ten years for aggravated assault and four years for one count of possession of a deadly weapon. The trial court imposed Range II, concurrent prison sentences of forty years for attempt to commit first degree murder and four years for the remaining conviction. Because the sentences for aggravated assault and attempted first degree murder were ordered to be served consecutively, the effective sentence is 50 years.

In addition to his challenge to the sufficiency of the evidence, the defendant presents the following issues for review:

(1) whether the trial court improperly allowed the state to orally amend the aggravated assault indictment to read "handgun" instead of "shotgun";

(2) whether the trial court improperly limited the defendant's cross-examination of one of the victims, Ameale Hudson;

(3) whether conviction on two separate charges of possession of a deadly weapon in the commission of an offense violated double jeopardy principles; and

(4) whether the defendant's prior convictions were improperly admitted into evidence at the sentencing hearing.

We reverse and dismiss the conviction on the second count of possession of a deadly weapon. Otherwise, the judgment is affirmed.

In the late evening of June 8, 1991, and during the early morning hours of the next day, the victim, Ameale Hudson, was a customer at the Poison Apple Lounge in Memphis, Tennessee. At approximately 1:00 A.M., the defendant and Dorothy Hudson, the victim's ex-wife, also arrived at the lounge.

At about 2:00 A.M., the victim decided to leave. Another customer observed that the defendant, who was leaning against the bar, had a gun in his possession. Just after the customer advised the manager of his discovery, the victim walked past the defendant and toward the exit. The victim felt a push from behind, fell to the floor, and then heard a gunshot. The shot struck Gary Tallie, who was standing near the door just beyond Mr. Hudson, in the buttocks.

The victim attempted to escape but tripped and fell. The defendant then approached the victim, pointed the weapon at his head, and fired. Because the victim turned just as the gun discharged, the shot penetrated his neck. The defendant then placed the weapon in his pants and left with Ms. Hudson.

At trial, Ms. Hudson testified that her ex-husband had previously threatened the defendant. She stated that just prior to the shooting, the victim had threatened both her and the defendant. She testified that on the night in question, she never saw either the victim or the defendant in possession of a

gun. Two family friends corroborated her testimony that the victim had previously made threats toward the defendant.

On appeal, the state is entitled to the strongest legitimate view of the evidence and all reasonable inferences which might be drawn therefrom. *State v. Cabbage,* 571 S.W.2d 832, 835 (Tenn.1978). The credibility of the witnesses, the weight to be given their testimony, and the reconciliation of conflicts in the testimony are matters entrusted exclusively to the jury as the triers of fact. *Byrge v. State,* 575 S.W.2d 292, 295 (Tenn.Crim. App.1978). The relevant question for us is whether, after reviewing the evidence in the light most favorable to the state, any rational trier of fact could have found the essential elements of the crime or crimes beyond a reasonable doubt. *State v. Williams,* 657 S.W.2d 405, 410 (Tenn.1983), *cert. denied,* 465 U.S. 1073, 104 S.Ct. 1429, 79 L.Ed.2d 753 (1984); Tenn.R.App.P. 13(e). The evidence is sufficient when a rational trier of fact can conclude that the defendant is guilty. *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

The record in this case establishes that the victim arrived at the Poison Apple Lounge sometime before the defendant did so. There was animosity between the two— apparently from their respective relationships with Dorothy Hudson. As the victim attempted to leave the lounge, the defendant fired once in his direction. The bullet struck Gary Tallie. The defendant then approached his intended victim and fired a second shot at point blank range. That the victim moved simultaneously to the shot probably saved his life. Based upon these facts, we find the evidence sufficient as to possession of a weapon with intent to commit an offense, aggravated assault, and attempt to commit first degree murder.

## I

The defendant argues that the trial court improperly allowed the state to amend the indictment charging the defendant with aggravated assault and one of the two counts of possession of a deadly weapon. Specifically, the defendant contends that the amendment, which replaced the word "shotgun" with "handgun," created a material variance in the indictment in violation of Rule 7(b) of the Tennessee Rules of Criminal Procedure.

It is, however, the duty of the appellant to prepare a record that conveys a fair, accurate, and complete account of what transpired in the trial court with respect to the issues that form the basis for the appeal. Tenn.R.App.P. 24(b); *State v. Miller,* 737 S.W.2d 556, 568 (Tenn.Crim.App.1987). When the record is incomplete and does not contain information relevant to a particular issue, this court may not make a ruling. *State v. Cooper,* 736 S.W.2d 125, 131 (Tenn. Crim.App.1987). In the absence of an adequate record, our court must presume the correctness of the trial court's ruling. Appellate courts may only review what is in the record and not what might have been or should have been included. *Dearborne v. State,* 575 S.W.2d 259, 264 (Tenn.1978).

In this case, there is no record of the state's motion to amend the indictment or any of the proceedings related thereto. The only references to the amendment are in the jury charge discussions and in the jury charge itself. To our knowledge, there was no objection to the amendment. Because the record is inadequate for appropriate consideration of this issue, we are unable to find error.

Moreover, a variance between the indictment and the evidence presented at trial is not fatal unless it is material and prejudicial. *State v. Moss,* 662 S.W.2d 590 (Tenn. 1984). And, while the rules do not authorize an amendment of the indictment without the consent of the defendant after jeopardy attaches, the record does not demonstrate any violation of the method required. Tenn. R.Crim.P. 7(b). Finally, we observe that under the evidence presented here, whether the shooting had been committed by a handgun rather than a shotgun was not material and certainly did not prejudice the defendant in the trial of the case.

## II

The defendant next complains that the trial court, by excluding certain court docu-

ments from separate proceedings, erroneously limited his cross-examination of the victim, Ameale Hudson. The state submits that if any error occurred in the limitation of the defendant's cross-examination of the victim that it was harmless. It contends that other testimony established the victim's bias.

■ Initially, we observe that a denial of the right to an effective cross-examination is "constitutional error of the first magnitude" and amounts to a violation of the basic right to a fair trial. *State v. Hill,* 598 S.W.2d 815, 819 (Tenn.Crim.App.1980). The propriety, scope, and control of the cross-examination of witnesses is, however, within the reasonable discretion of the trial judge. *Coffee v. State,* 188 Tenn. 1, 4, 216 S.W.2d 702, 703 (1948). Appellate courts may not disturb discretionary limitations on cross-examination absent a clear and plain abuse. *State v. Fowler,* 213 Tenn. 239, 253, 373 S.W.2d 460, 466 (1963); *State v. Johnson,* 670 S.W.2d 634, 636 (Tenn. Crim.App.1984).

The trial court limited somewhat the defendant's cross-examination of the victim in reference to his recent prior conduct toward the defendant and Ms. Hudson; more specifically, it would not permit documentation and supporting evidence that Ms. Hudson had previously sought and received a protective order against her ex-husband or that the defendant had previously obtained a peace warrant against the victim. The defendant made an offer of proof which he argues establishes extreme animosity, bias, and prejudice toward the defendant on the part of the victim. Municipal and chancery court documents were not included in the offer.

■ We find no reversible error. The trial court's specific ruling was that the defendant could not use the "court papers" to "prove that they ... were having problems.... I am not cutting you off in proving there was trouble between these men. I am not cutting you off to prove there was trouble between him and his wife." While much of the testimony elicited from the victim during the offer was proof that would have been admissible if presented at trial, we do not view the trial court's ruling as having excluded it. Ironically, and despite a lengthy offer of proof, the peace warrant and order of

protection were never placed in the record. Under these circumstances, we can find no fault with the trial court's decision.

Moreover, Ms. Hudson testified to the threats the victim had made since their separation and related other problems both she and the defendant had experienced in dealing with her ex-husband. In fact, the victim admitted that he had ill feelings toward the defendant. He conceded that he had created some problems because he didn't want his son living with the defendant.

Based on these facts, we find that any error in the limitation on the defendant's cross-examination of the victim was harmless. The victim's bias against the defendant is apparent from this record. The defense was able to demonstrate that even though the protective order and peace warrant were not permitted into evidence. The jury was not, in our view, denied the opportunity to weigh that bias, in context, against the victim's credibility in describing his account of the crimes.

III

The defendant also argues that convictions on two separate counts of possession of a deadly weapon with the intent to employ in the commission of an offense, Tenn.Code Ann. § 39–17–1307(c)(1), violate his rights under the double jeopardy clause of the fifth amendment of the United States Constitution. The defendant does not challenge the propriety of his convictions on the separate felonies of aggravated assault and attempt to commit first degree murder. His only argument is that these convictions were the result of a single transaction of events which may only give rise to prosecution for one violation of § 39–17–1307(c)(1).

■ The double jeopardy guarantees under the fifth amendment to the United States Constitution and Art. 1, § 10 of the Tennessee Constitution protect against a second prosecution for the same offense after an acquittal. The constitutional provisions also prohibit a second prosecution for the same offense after conviction and multiple punishments for the same offense. *Ohio v. Johnson,* 467 U.S. 493, 104 S.Ct. 2536, 81 L.Ed.2d

425 (1984); *Brown v. Ohio,* 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977); *North Carolina v. Pearce,* 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969).

In *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), the United States Supreme Court established a test for determining whether multiple convictions were barred on grounds of double jeopardy:

> Each of the offenses created requires proof of a different element. The applicable rule is that, where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is *whether each provision requires proof of an additional fact which the other does not.*

284 U.S. at 304, 52 S.Ct. at 182 (emphasis added); *State v. Black,* 524 S.W.2d 913 (Tenn.1975). *See United States v. Dixon,* —— U.S. ——, 113 S.Ct. 2849, 125 L.Ed.2d 556 (1993).

In *Black,* our state Supreme Court, while adopting the *Blockburger* test, found "same transaction" or "same evidence" standards unhelpful in a double jeopardy analysis:

> [E]ach case requires close and careful analysis of the offenses involved, the statutory definitions of the crimes, the legislative intent and the particular facts and circumstances.

*Id.* at 919.

*Black* cited with approval the case of *Dowdy v. State,* 158 Tenn. 364, 13 S.W.2d 794 (1928), which categorized circumstances giving rise to double jeopardy principles. One of those circumstances was as follows:

> When the facts constitute but one offense, though it may be susceptible of division into parts, as for stealing several articles from the same person at the same time, conviction for stealing one of the articles will bar subsequent prosecution for stealing the others.

158 Tenn. at 366, 13 S.W.2d at 794.

The application of the *Blockburger* test (same elements) requires scrutiny of the statutory elements of the possession charges and the facts relied upon in each count. Tenn. Code Ann. § 39–17–1307(c)(1) provides that "[a] person commits an offense who possesses any deadly weapon with intent to employ it in the commission of or escape from an offense."

Here, the defendant does not dispute the fact that the convictions for aggravated assault and attempt to commit first degree murder are separate and distinct offenses. The facts surrounding the aggravated assault were complete prior to the attempt on the victim's life. Yet the prohibited act is the possession of a weapon in the commission of an offense. It is a crime of intent. And, while there were two separate assaults, the defendant's single offending act was to possess the handgun under the applicable statutory language.

There were additional facts which related to each separate assault. Yet the *Blockburger* test is not particularly helpful here. Seconds passed between the first and second shots. That the defendant possessed the weapon with the intent to commit an offense established the critical elements of the crime.

Our opinion in *State v. Johnson,* 765 S.W.2d 780 (Tenn.Crim.App.1988) is analogous. The defendant, found in possession of 9½ grams of cocaine, was found guilty of two felony counts: an intent to sell and an intent to deliver. We held that a single possession of the same substance, despite any broader mental intent, could support only one conviction when the facts relied on for both were the same. *Id.* at 782.

Similarly, in *Brown,* the United States Supreme Court held that one could not be convicted for both auto theft and joy riding because of a nine-day interval between the time of the theft and the apprehension of the defendant:

> The Double Jeopardy Clause is not such a fragile guarantee that prosecutors can avoid its limitations by the simple expedient of dividing a crime into a series of temporal or spatial units.

*Id.* 432 U.S. at 169, 97 S.Ct. at 2227.

In *United States v. Jones,* 533 F.2d 1387 (6th Cir.1976), the defendant, a convicted felon, was indicted on three separate counts for

possessing a handgun on three different dates: the date he purchased it; the date he was stopped for a traffic violation; and the date the gun was confiscated as the result of a search warrant. The three events occurred over a period of three years. The Sixth Circuit determined that the crime of possession was a "course of conduct, not an act . . ." and that there could be no separate punishments. *Id.* at 1391. It ruled that a second possession was separately chargeable only if it had been interrupted. In *Jones,* the court reversed the latter conviction on grounds of statutory construction, finding that the *Blockburger* test was not workable for crimes involving a "course of conduct":

> A course of conduct involves a number of acts. To hold that proof of a different act under a separate count establishes a separate offense would destroy the principle that a course of conduct is punishable as only one offense.

Finally, we note that when an Act of Congress is ambiguous as to the allowable unit of prosecution, doubts are resolved in favor of lenity for the accused. *Bell v. United States,* 349 U.S. 81, 83, 75 S.Ct. 620, 622, 99 L.Ed. 905, 910 (1955).

*Id.* at 1392.

In *United States v. Horodner,* 993 F.2d 191 (9th Cir.1993), the Ninth Circuit held that double jeopardy principles precluded separate convictions when the defendant, a felon, acquired a shotgun, took it back to the dealer to have it repaired, then picked it up ten days later. The court held that Horodner's possession was "one uninterrupted course of conduct." [1]

Here, there was a single intent to use the weapon in the commission of a crime against the victim. That there were two shots, one of which struck an unintended victim and properly resulted in a conviction for aggravated assault, does not support separate weapons convictions in our interpretation of the Tennessee statute. Secondly, double jeopardy principles, as established in this state, prohibit the prosecution of a second weapons charge under these circumstances.

## IV

The defendant also complains that his prior convictions, in reference to his sentencing, are constitutionally inadequate; he further argues that certain of the information contained in his presentence report was inadmissible hearsay and, therefore, improperly relied upon at his sentencing hearing to establish him as a Range II offender. We do not agree.

■ The defendant may not, in this proceeding, collaterally attack his prior convictions. That must be done in a separate post-conviction proceeding. *State v. McClintock,* 732 S.W.2d 268, 271–72 (Tenn.1987). If successful in that attack, there may be a possible avenue for relief. *See State v. Prince,* 781 S.W.2d 846 (Tenn.1989).

■ The defendant's challenge to the admissibility of the information in the presentence report is equally without merit. Tenn. Code Ann. § 40–35–209(b) provides that the person who prepared the presentence report may be a witness at the sentencing hearing. Reliable hearsay is admissible. Tenn.Code Ann. § 40–35–209(b). In addition, Tenn. Code Ann. § 40–35–210(b)(2) provides that the presentence report, which in this instance contained references to the defendant's prior criminal record (including all of the particulars for several prior felonies), be considered by the court when determining the sentence to be imposed. Moreover, the defendant did not deny he committed the earlier crimes; nor did he seek a continuance for an opportunity to refute the accuracy of the information. In summary, we find the evidence of the prior crimes admissible.

Accordingly, the judgment is affirmed.

BIRCH and WHITE, JJ., concur.

---

1. While adopting *Blockburger,* Tennessee appears to have established a broader concept of double jeopardy subject to case-by-case analysis. There is federal authority with similar facts to these which would suggest a different result here. *See* *United States v. Johnson,* 986 F.2d 134, *rehearing granted,* 996 F.2d 836 (6th Cir.1993); *United States v. Henry,* 878 F.2d 937 (6th Cir.1989); *United States v. Fontanilla,* 849 F.2d 1257 (9th Cir.1988).