IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs July 23, 2024

## STATE OF TENNESSEE v. BOBBY RAY LADD, JR.

**Appeal from the Criminal Court for Knox County**
**No. 116720   Hector Sanchez, Judge**

_____

### No. E2023-01641-CCA-R3-CD
_____

After pleading guilty to evading arrest and being sentenced to probation, Bobby Ray Ladd, Jr., Defendant, was the subject of several probation violation warrants. After a hearing, the trial court determined that Defendant violated probation and ordered the probationary sentence revoked. Defendant appeals, arguing that the trial court improperly admitted hearsay evidence at the violation hearing. Because the record is inadequate for our review, we determine that Defendant has waived the issue. Accordingly, the judgment of the trial court is affirmed.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed

TIMOTHY L. EASTER, J., delivered the opinion of the court, in which TOM GREENHOLTZ and MATTHEW J. WILSON, JJ., joined.

George Edward S. Pettigrew, Knoxville, Tennessee, for the appellant, Bobby Ray Ladd, Jr.

Jonathan Skrmetti, Attorney General and Reporter; Benjamin A. Ball, Senior Assistant Attorney General; Charme P. Allen, District Attorney General; and Willie Lane, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

Defendant was indicted for one count of evading arrest in a motor vehicle causing risk of death or injury and one count of driving on a suspended license by the Knox County Grand Jury in December of 2019. In September of 2021, he pled guilty to evading arrest in a motor vehicle causing risk of death or injury. The plea agreement included dismissal of the driving suspended charge. Defendant was sentenced to three years in incarceration, but the sentence was suspended to probation after service of thirty days.

In December of 2021, a probation violation warrant was filed against Defendant, alleging that he committed domestic assault. The warrant stated Defendant violated two rules of his probation: Rule 1 by violating the law; and Rule 14 by engaging in assaultive behavior. The violation warrant was later amended to include a second violation of Rule 1 for violating a protective order. After a hearing, the trial court granted the revocation but permitted Defendant to resume probation.

In June of 2022, another probation violation warrant was filed. This warrant alleged Defendant committed aggravated domestic assault on June 11, 2022, again in violation of Rules 1 and 14 of probation. The warrant was amended in October of 2022 based on allegations that Defendant committed a new offense of aggravated domestic assault on October 13, 2022, again violating Rules 1 and 14 of probation.

According to a minute entry, Defendant was released on his own recognizance on March 2, 2023. As a condition of his release, Defendant was ordered to attend anger management classes and to have no contact with the victim. The case was continued.

On October 12, 2023, the trial court executed another amendment to the probation violation warrant. This amendment alleged Defendant had committed aggravated assault, domestic assault, driving on a suspended license, failure to show financial responsibility, and leaving the scene of an accident involving property damage, all in violation of Rules 1 and 14 of probation. The trial court entered an order the next day amending the warrant again based on allegations that Defendant also violated Rules 5 and 6 of probation by failing to stay in contact with his probation officer and failing to carry out lawful instructions of his probation officer.

On November 17, 2023, the trial court held a hearing on the probation violation. At the hearing, Jonathan Pettigrew (no relation to Defendant's attorney) testified that he was at home in his bed on September 29, 2023, at around 1:30 p.m., when he heard what he thought was a car crash. He walked outside and saw two cars that appeared to have been in a wreck. The airbags in one of the cars were deployed.

Mr. Pettigrew saw three women and one man at the scene. They were "screaming" at each other. The man, who Mr. Pettigrew described as "black," got into one of the cars and left the scene. The women were "very distraught."

Knoxville Police Officer Darren Carden responded to the scene of the crash outside a Kroger grocery store. He observed a black sedan that had crashed into items at the store. A woman later identified as Defendant's wife, the victim, was lying on the ground receiving treatment from the Knoxville Fire Department. The victim was yelling,

screaming, out of breath, and appeared to be in pain. The officer described her as "in distress," "out of it," and "scared." The victim was taken to the hospital with bruises and cuts on her face. The victim was placed in a C-collar.

The victim told Officer Carden that her husband chased her in his car from the interstate and eventually rammed his car into the back of her car, causing the crash. After the crash, the victim explained that Defendant pulled her out of her car by her hair and "beat her like a man."[1] The victim identified Defendant as her husband.

Officer Carden and his partner were wearing body cameras during their conversation with the victim. At the hearing, Officer Carden testified that he reviewed his partner's body camera footage and that it was an accurate representation of the events. Part of the video was played for the trial court, but the record does not reflect that either party moved for the video to be introduced into evidence. Defendant objected to the portion of the video based on the rule of completeness. However, when the State offered to play the entire video and the trial court explained that the entire video would be in evidence, Defendant stated that he did not want more of the video published. The trial court interpreted Defendant's statements as a withdrawal of the objection. Defendant then objected based on "the right of confrontation" and hearsay. The trial court reiterated its ruling that the victim's statements were excited utterances and that the hearsay was reliable because it was "on the body cam." Defendant then argued that the statements were not relevant. The trial court overruled the objections and permitted the State to play an additional portion of the video. It is not clear from the record what this additional portion included.

On cross-examination, Officer Carden also testified that he reviewed cell phone videos taken by Mr. Pettigrew. He reported that the cell phone video showed a black male identified by the victim as Defendant. According to the officer, people can be heard arguing on the video. Officer Carden also testified that he visited the victim in the hospital where she expressed fear that Defendant would find her. Hospital officials permitted the victim to use an alias while she was in the hospital.

The State also introduced a jail call Defendant made on October 10, 2023. The recording is not part of the record on appeal. Captain Emily Ayers of the Knox County Sheriff's Department testified that while Defendant was in custody, he attempted to contact the victim 583 times and connected with her 371 times.

---

[1] Defendant objected to this testimony as hearsay, but the trial court overruled the objection. The trial court determined that the victim's statements were excited utterances and that the officer's testimony was sufficient to show that the victim was under the stress of the event at the time the statements were made. *See* Tenn. R. Evid. 803(2).

The trial court revoked Defendant's probation in full, finding that Defendant materially violated the terms and conditions of probation. The trial court based its decision on the victim's "excited utterances on the scene" identifying Defendant as the perpetrator in addition to the victim's "statements [to the officer] about being in fear in the hospital." The trial court also commented that the "video that shows both parties" and the "proof about the amount of contact that has occurred between" Defendant and the victim after the crash were considered in making the decision to revoke probation. Defendant appealed.

*Analysis*

On appeal, Defendant argues that the trial court abused its discretion by allowing hearsay evidence to be admitted. Specifically, Defendant complains that the body cam video included statements made by the victim who was not shown to be "an unavailable declarant." The State argues that Defendant has waived the issue by failing to supply this Court with an adequate record. The State also notes that Defendant does not challenge the victim's statements as described by Officer Carden and that Defendant did not object to the victim's statements based on the Confrontation Clause.

As we have stated on nearly immeasurable occasions, it is the duty of the appellant to provide a record which conveys "a fair, accurate, and complete account of what transpired with respect to those issues" which form the basis of the appeal. Tenn. R. App. P. 24(b); *State v. Rimmer*, 623 S.W.3d 235, 296 (Tenn. 2021) (appendix). In the absence of an adequate record, this Court must presume that the trial court's ruling was correct. *See State v. Richardson*, 875 S.W.2d 671, 674 (Tenn. Crim. App. 1993). Here, the trial court ruled that the victim's statements in the body camera video were admissible as excited utterances and explained to the parties that the published portions of the video would be "in evidence." Despite this pronouncement by the trial court, it does not appear that either party moved the body camera video into evidence at the hearing. In our estimation, Defendant had ample opportunity to do so at the hearing and/or to supplement the record after the State filed its brief and pointed out that the record was inadequate. *See* Tenn. R. App. P. 24(g) (stating that either party can designate "any matter" to be included in the record if it is "necessary to convey a fair, accurate and complete account" of the matters in the trial court). For whatever reason, Defendant chose not to do so. Consequently, the record is inadequate for our review and Defendant has waived this issue. The judgment of the trial court is affirmed.

_____
TIMOTHY L. EASTER, JUDGE

- 4 -